IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STEVEN RAY HATFIELD and
LISA LYNN HATFIELD,

          Plaintiffs,

v.                                    CIVIL ACTION NO. 3:19-00584

COLUMBIA GAS TRANSMISSION, LLC,
a Delaware limited liability company,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court is a Motion for Summary Judgment filed by Defendant Columbia Gas Transmission, LLC. *Mot. for Summ. J.*, ECF No. 29. Plaintiffs Steven Ray Hatfield ("Mr. Hatfield") and Lisa Ray Hatfield ("Mrs. Hatfield") timely filed a Response in Opposition, and Defendant did the same with its Reply. *Resp. in Opp'n*, ECF No. 31; *Reply,* ECF No. 32. The issues have been fully briefed and are ripe for resolution. For the reasons set forth below, the Court **DENIES** the Motion.

**I. BACKGROUND**

Plaintiffs are—or at least were, as is more fully discussed below—the owners of a 3.28-acre tract of land located in Putnam County, West Virginia. *See Def.'s Ex. B*, ECF No. 29-3, at 3–4; *Def.'s Ex. C*, ECF No. 23-4, at 4.[1] This tract of land lies at the heart of the instant dispute, which arises from Defendant's decision to build a gravel road across a portion of Plaintiffs' property in

---

[1] The Court's citations to particular page numbers throughout this Memorandum Opinion and Order refer to the Bates numbers located in the header of a given filing.

2018. *See Compl.*, ECF No. 1-1, at ¶ 8. Though Plaintiffs had not lived on the property for nearly five years, they initiated this action in the Circuit Court of Putnam County seeking damages for trespass and an injunction to prevent Defendant from accessing the gravel road. *See id.* at ¶¶ 1–17; *Def.'s Ex. B*, at 4, 6. Defendant filed a Notice of Removal in this Court on August 8, 2019, relying on diversity of citizenship between itself and Plaintiffs. Defendant subsequently clarified that it had ceased using the road and had no intention of resuming use of the road in the future, and Plaintiffs agreed to voluntarily dismiss their claim for injunctive relief. *See Pl.'s Resp.*, ECF No. 7. The only claim remaining in dispute is therefore Plaintiffs' claim for trespass.

During discovery, Defendant employed Dean E. Dawson to prepare an appraisal of the property at issue. *See Def.'s Ex. D*, ECF Nos. 29-5, 29-6. Mr. Dawson reviewed two possible scenarios: one in which the trespassed-upon property measured 3,000 square feet, and another where it measured 5,000 square feet. *Def.'s Ex. D*, ECF No. 29-5, at 4–5. His report—premised on consideration of "the construction road as a temporary construction easement for a period of two (2) years"—concluded that the value of any easement would be $93 in the first scenario and $154 in the second. *Id.* at 40. He also noted that "[a]ll disturbance of the temporary easement will be returned to its prior state before the taking once the time frame and activity is completed." *Id.*

After receipt of Mr. Dawson's report, Plaintiffs filed a "Motion to Extend Disclosure of Expert Rebuttal Witness Deadline." *Mot. to Extend*, ECF No. 20, at 1. Defendant argued that Plaintiffs' Motion was a cover to bolster their own case-in-chief rather than rebut anything in Mr. Dawson's report. *Resp. in Opp'n to Mot. to Extend*, ECF No. 23, at 2–3. The Court agreed and denied Plaintiffs' Motion, leaving Mr. Dawson's report as the sole appraisal of the property.

One final point is worth addressing before turning to the substance of Plaintiffs' claims: the actual ownership of the property at issue. In their Complaint, Plaintiffs claim that they "were

and are, at all times relevant hereto, . . . owners of that certain tract of land" at the center of this case. *Compl.*, at ¶ 1. This is not true. While Plaintiffs were originally both owners of the property, a 2008 divorce decree transferred the property solely to Mr. Hatfield. *Def.'s Ex. B*, at 3; *Def's Ex. C*, at 4. Notably, Plaintiffs failed to file a corrective deed reflecting this change in ownership. *Resp. in Opp'n*, at 2. Mr. Hatfield remained the (unrecorded) sole owner of the property until July 17, 2019, when Mrs. Hatfield and the couple's daughter, Chelsea Rose Hatfield, were granted an ownership interest in the property. *Ex. D*, ECF No. 29-6, at 22. With this factual background in mind, the Court will review the legal framework applicable to review of Defendant's Motion.

## II. LEGAL STANDARD

Summary judgment is only appropriate where a moving party is able to demonstrate that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). These limitations mean that the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Yet while the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Summary judgment is warranted when the nonmoving party has the burden of proof on an essential element of his or her case and does not make a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.

*Anderson,* 477 U.S. at 252. In practical terms, this means that conclusory allegations or unsupported speculation—without more—are insufficient to preclude summary judgment. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

### III. DISCUSSION

Defendant argues that its Motion should be granted for three reasons: first, that no trespass occurred, second, that Mrs. Hatfield lacks standing, and third, that summary judgment is at least appropriate as to damages. The Court considers each argument in turn.

**1. Trespass**

Defendant's first argument centers on the fact that Plaintiffs were not living on their land when the trespass occurred and were not using the specific portion of land at issue for any purpose.[2] *Mem. of Law*, ECF No. 30, at 5. For these reasons, Defendant contends that Plaintiffs have "failed to meet an essential element of a trespass claim." *Id.* It does not define which element that is with any precision, and for good reason: none exists.

Courts in West Virginia have long defined trespass as "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property."[3] *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945). Citing *Hark*, the Fourth Circuit Court of Appeals put a slightly different spin on this reasoning in concluding that "the defendant's conduct must result in an actual, nonconsensual invasion of the plaintiff's property, which interferes with the plaintiff's possession and use of that property" to constitute trespass.

---

[2] Plaintiffs counter with a set of largely unresponsive dictionary definitions and treatise excerpts. *Resp. in Opp'n*, at 1–2. Nevertheless, the core of their argument appears to be that the trespass is ongoing as the gravel road remains on Plaintiffs' property (along with other debris). *Id.* at 2.

[3] Axiomatic though it is to note, federal courts sitting in diversity apply the substantive law of the state in which they sit. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

*Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011). Note what neither standard requires: that a plaintiff actually live on a piece of property at issue, or that she utilize her property for any particular purpose. The fact that Plaintiffs did not reside on the contested property at the time the initial trespass occurred has no bearing on their ability to raise a trespass claim. The same is true of the fact that "they were not using the portion of the Property that was allegedly trespassed on for any purpose." *Mem. of Law*, at 5.

Having established what is irrelevant to Plaintiffs' claim, it is worth considering what *is* relevant. Plaintiffs have alleged that Defendant constructed an access road on their property, that they continued to use it despite their demands to cease doing so, and that construction of the road damaged their property. Defendant has produced no evidence suggesting otherwise,[4] making this precisely the sort of case that gives rise to a claim for trespass under West Virginia law. *See Wendy Rupe Trust v. Cabot Oil & Gas Corp.*, No. 2:09-cv-01435, 2011 WL 1527594, at *1–2 (S.D.W. Va. Apr. 20, 2011) (denying summary judgment on trespass claim where defendant constructed access road over plaintiffs' property without first obtaining their consent). To hold otherwise would seemingly allow Defendant to undertake construction projects in all nonresidential private property that is not actively put to productive use—a radical transformation of real property law that the Court would prefer to avoid. Summary judgment is therefore inappropriate with respect to Plaintiffs' trespass claim.

2. **Standing**

Defendant's next argument is that Mrs. Hatfield lacks standing to bring this suit as she "does not have an ownership interest in the property and cannot bring or prevail on a trespass

---

[4] To be clear, Defendant *did* cease using the road after this litigation commenced. *See Mot. to Dismiss*, ECF No. 4. The road, however, remains on the property.

claim."[5] *Mem. of Law*, at 3. Normally, this would be a question simple enough to answer; Mrs. Hatfield is listed as co-owner of the property in a deed executed on July 17, 2019, and therefore *does* have an ownership interest in the property. *See Ex. D*, ECF No. 29-6, at 22. Unfortunately, two complications short-circuit this analysis.

The first of these complications relates to the precise point at which Mrs. Hatfield assumed an ownership interest in the property. The present deed establishing Mrs. Hatfield's co-ownership was executed on July 17, 2019. *Id.* Before this point—and pursuant to Plaintiffs' divorce decree—Mr. Hatfield was the property's sole owner. As the road was built in 2018 and it is unclear when Defendant ceased using it, there is a reasonable possibility that the road was no longer in use at the time of the deed's execution. Yet this is precisely the sort of dispute over material fact that the Court is unable to address at summary judgment. *Celotex Corp.*, 477 U.S. at 322–33.

The second complication is raised by Defendant in a footnote, and references the fact that the July 17, 2019 deed pertaining to the property at issue here purports to convey the land from *both* Plaintiffs to themselves and their daughter. *See Ex. D*, ECF No. 29-6, at 22. Of course, Mrs. Hatfield had no ownership interest in the property following her divorce and therefore no ability to convey any interest in it to anyone. For this reason, Defendant argues that the deed's validity is questionable. *See Reply*, at 5 n.9. The Court sees no merit in this position. Regardless of whether

---

[5] Plaintiffs' argument in response is once again quite muddled, simultaneously suggesting that failure to file a corrected deed somehow negated the property transfer embedded in their divorce degree and that their daughter Chelsea could theoretically be a necessary party. *Resp. in Opp'n*, at 2–3. Both these contentions are meritless. Obviously enough, a court-ordered divorce decree cannot be undone by simply ignoring it. And while Plaintiffs muse about the possibility that Chelsea Hatfield *could* be a necessary party, they never actually say she is one. This much is appropriate, as they do not name her in their Complaint and have not moved to amend it. As a final matter, counsel avers that it is his "understanding that Steven Ray Hatfield desires Lisa Lynn Hatfield to be a party to this action." *Id.* at 2. At risk of stating the obvious, Mr. Hatfield's preferences do not confer standing upon Mrs. Hatfield.

Mrs. Hatfield had any ownership interest to convey at the time the deed was executed—and to be clear, she did not—the dispositive fact remains that Mr. Hatfield had a sole ownership interest in the property to convey to Mrs. Hatfield and Chelsea Hatfield. It follows that Mrs. Hatfield has standing to pursue the trespass claim she has raised here.

### 3. Damages

Defendant's final argument is that "[e]ven if Plaintiffs could maintain a claim for trespass, there is no genuine issue of material fact as to the damages at issue in this case."[6] *Mem. of Law*, at 7. It claims that Plaintiffs have no basis to testify to the value of their property, and that Mr. Dawson's expert report provides the "only actual evidence in the record as to value [sic] of the land that [Defendant] allegedly temporarily trespassed on." *Id.* at 8. Defendant is wrong on both counts.

First—and as Defendant itself notes—"[i]t is generally, if not universally, accepted that an owner of property may testify as to his or her opinion of such property's value without demonstrating any additional qualifications to give opinion evidence." *Jones v. Consol. Coal Co.*,

---

[6] In response, Plaintiffs make several arguments worth briefly addressing. First, they claim that Defendant's calculation of damages at $154 is "disingenuous," as it falls below the $75,000 amount-in-controversy threshold that confers jurisdiction upon the Court. *Resp. in Opp'n*, at 3. This may well be the case, but it is equally true that Plaintiffs seek damages of "at least [$]150,000"—well above the jurisdictional floor. *Def.'s Ex. C*, at 9. Plaintiffs also argue that trespass is "one of the causes of action which are [sic] 'actionable per se'" and requires no showing of damages. *Resp. in Opp'n*, at 3. The Court pauses to acknowledge some ambiguity on this point. At common law, "a land owner's possession is interfered with when a trespass occurs regardless of damages because the land owner has an interest in excluding others from his or her land." *Ghafourifar v. Community Trust Bank, Inc.*, 2014 WL 4809782 (S.D.W. Va. Aug. 27, 2014), *report and recommendation adopted*, No. 3:14-cv-01501, 2014 WL 4809794 (S.D.W. Va. Sept. 26, 2014). Yet precedent from the Fourth Circuit Court of Appeals and the Supreme Court of Appeals of West Virginia suggests a break from this rule, requiring that a plaintiff "establish that the defendant's conduct produced some injury." *Rhodes*, 636 F.3d at 93. The Court need not resolve this tension here, however, as Plaintiffs seek compensation for "damages to the property, direct and consequential damages, attorney fees, interest, costs and such additional relief as may be found just an proper" in addition to damages for "trespass" standing alone. *Compl.*, at 4.

No. 1:13CV11, 2014 WL 1053678, at *3 (N.D.W. Va. Mar. 19, 2014) (quoting *In re Brown*, 244 B.R. 603, 611 (Bankr. W.D. Va. 2000)) (internal quotation marks omitted). It is true that such testimony "must be founded upon substantial data, not mere conjecture, speculation or unwarranted assumption." *United States v. Sowards*, 370 F.2d 87, 92 (10th Cir. 1966). It is similarly true that both Mr. and Mrs. Hatfield have valued their *claim* at $100,000 and $150,000, respectively, based on just such speculation. *See Def.'s Ex. B*, at 8; *Def.'s Ex. C*, at 9. These valuations appear to be based on concerns that the road weakened a hillside above Plaintiffs' intended home, thus placing their lives at risk. Plaintiffs have provided no expert evidence in support of this fear, which places the accuracy of their estimates in doubt. Yet this shortcoming does not foreclose the possibility that Plaintiffs may offer testimony of the value of their property—not of their claims—that is based on substantial data. Faced with a similar possibility in *Jones v. Consolidated Coal Company*, Judge Stamp required a "detailed proffer from plaintiffs as to the specific testimony to be offered prior to plaintiffs offering any testimony as to the value of the property." 2014 WL 1053678, at *3. The Court finds this approach compelling, and will require Plaintiffs to submit such a proffer if they intend to offer opinion testimony at trial as to the value of their property.

      Defendant's last argument concerns Mr. Dawson's expert report, and specifically its conclusion "that, at most, Plaintiffs are entitled to $154 in compensation" for the trespass. *Mem. of Law*, at 8. Plaintiffs counter by noting that Defendant's valuation is based on a two-year rental value of the portion of the property used for the road, thereby ignoring "the value bestowed upon Defendant through the unlawful use of Plaintiffs' [p]roperty, the hypothetical negotiated rate of acquiring a legal easement, cost to repair the property to its original condition, statutorily proscribed damages, annoyance and discomfort[,] and nominal damages." *Resp. in Opp'n*, at 4. In

support of most of these categories of damages, Plaintiffs cite widely to a set of decisions by intermediate state courts of appeals from Illinois to California. Obviously enough, this Court is not bound by this extra-jurisdictional precedent that often directly conflicts with West Virginia law. *See, e.g.*, *Young v. Appalachian Power Co.*, No. 2:07-479, 2008 WL 4571819, at *8 (S.D.W. Va. Oct. 10, 2008) (reasoning that disgorgement of profits from power company that continued maintenance of power lines after right-of-way agreement expired was inappropriate as a measure of damages). Instead, the Court considers state substantive law to determine the availability of certain damages.

In West Virginia, "[t]he measure of damages for trespass to realty is the rental value of the property wrongfully occupied and withheld, with compensation for injury to the residue thereof." *Bethlehem Steel Corp. v. Shonk Land Co.*, 288 S.E.2d 139, 149 (W. Va. 1982) (internal citation and quotation marks omitted). Defendant's expert report speaks to the first portion of this rule, concluding that two years of use over a 5,000 square foot tract of land would equate to a rental value of no more than $154. Yet the report is silent with respect to the second clause: namely, that compensation will also be provided "for injury to the residue thereof." *Id.*

It is this critical shortcoming that precludes summary judgment in Defendant's favor. Plaintiffs squarely allege—in their Complaint and in their responses to Defendant's interrogatories—that construction of the road damaged their land and rendered the property less safe. *See Compl.*, at 4 ("Plaintiffs . . . demand judgment against Defendant . . . for . . . damages to the property."); *Def.'s Ex. A*, ECF No. 29-1, at 5 ("Plaintiffs claim that Columbia Gas's trespass blocked their access to their property as well as damaged their property with construction of the road and fence thereon."). Mr. Dawson's expert report ignores these allegations entirely, and in fact appears to rest upon the erroneous assumption that "[a]ll disturbance of the temporary

easement" over Plaintiff's property "will be returned to its prior state before the taking once the time frame and activity is completed." *Def.'s Ex. D*, ECF No. 29-5, at 40. Of course, the property has not been returned to its prior state and the parties' briefing is not clear as to whether there exists any plan to do so in the future.

The Court concedes that Plaintiffs will face a significant burden at trial in establishing damages with any precision, given their failure to produce expert testimony that would speak to diminution of value. Yet for the Court to dispose of this action through summary judgment would require it to conclude that no genuine issue of material fact exists with respect to lasting damage to the property. Such a conclusion would bely the parties' straightforward disagreement over appropriate damages in this case. It is entirely possible that the road's construction actually did disturb the property and render it less suitable for future use, and it is similarly possible that one or both Plaintiffs could offer testimony to this effect. To hold that damages for such potential harms are unavailable to Plaintiffs even where Defendant's expert is silent on the question would be an inappropriate use of the Court's authority at the summary judgment stage, and so the Motion is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion for Summary Judgment, ECF No. 29, and **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: July 14, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE